UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

        Plaintiff,

      v.

JOSE GOMEZ-HERNANDEZ,

        Defendant.

No. CR-08-6005-FVS

ORDER DISMISSING INDICTMENT

**THIS MATTER** came before the Court for oral argument on the Defendant's Motion to Dismiss the Indictment, Ct. Rec. 33. Assistant United States Attorney James P. Hagarty appeared on behalf of the United States. The Defendant was present and represented by Kelly A. Canary.

The Defendant, Jose Gomez-Hernandez, is charged with being found in the United States after four prior deportations. The Defendant moves to dismiss the indictment on the grounds that the four prior deportation orders were unconstitutionally invalid. The Court finds that the entry of the deportation order of May 11, 2006 was fundamentally unfair. The subsequent orders reinstating the May 11, 2006 deportation order were likewise fundamentally unfair. The Defendant's motion will accordingly be granted and the indictment dismissed.

**BACKGROUND**

On April 19, 2006, the U.S. Citizenship and Immigration Services

ORDER DISMISSING INDICTMENT- 1

("USCIS") issued a Notice to Appear to the Defendant.  Def.'s Ex. A.
The Notice alleged that the Defendant was a native of Mexico present
in the United States without permission.  The Notice further alleged
that the Defendant had been convicted of the crime of Second Degree
Robbery in the Superior Court of Washington in 2004.  *Id.* at 2.

The Defendant executed a Notice to Respondent requesting an
immediate hearing and waiving his right to a 10-day waiting period.
Def.'s Ex. B.  The Defendant was given notice that he would be held in
custody until his case had been resolved.  Def.'s Ex. C.

On May 9, 2006 the Defendant and the Bureau of Immigration and
Customs Enforcement ("ICE") entered into a Stipulated Request For
Order and Waiver of Hearing.  Def.'s Ex. D.  Through this document,
the Defendant represented that he was aware of his legal rights,
admitted to the factual allegations in the Notice, and waived his
right to a hearing before an immigration judge.  *Id.* at ¶¶ 2-4.  He
also agreed to accept a written order of removal and waived his right
to appeal the written order.  *Id.* ¶¶ 10-11.

On May 11, 2006 Immigration Judge Kenneth Josephs issued an order
providing for the Defendant's removal from the United States on the
basis of the Stipulated Request for Order described above.  Def.'s Ex.
E.  A warrant of Removal or Deportation was issued the next day,
Def.'s Ex. F, and the Defendant was deported.

The Defendant reentered the United States on three subsequent
occasions: July 3, 2006, July 13, 2006, and July 18, 2006.  Def.'s Ex.
G; Def.'s Ex. I; Def.'s Ex. K.  On each occasion, a USCIS official
reinstated the deportation order of May 11, 2006 and the Defendant was

ORDER DISMISSING INDICTMENT- 2

deported.

On January 15, 2008, a grand jury indicted the Defendant on one count of being an Alien in the United States After Deportation. Indictment, Ct. Rec. 13.  The Indictment alleges that the Defendant has been previously deported on four prior occasions, all "subsequent to a conviction on March 4, 2005, of Robbery in the Second Degree."

**DISCUSSION**

**I.    STATUTORY AND REGULATORY FRAMEWORK**

**A.    Stipulated Removal**

Under the Immigration and Nationality Act ("INA"), an immigration judge must determine whether or not an alien is deportable.  8 U.S.C. § 1229a(a)(1).  An immigration judge may enter an order of deportation on the basis of a stipulation between the alien and the USCIS.  8 U.S.C. § 1229a(d).  By regulation, the immigration judge may do so without a hearing on the basis of the charging documents and, in relevant cases, the stipulation.  8 C.F.R. § 1003.25(b).  However, "If the alien is unrepresented, the Immigration Judge must determine that the alien's waiver [of a hearing] is voluntary, knowing, and intelligent." *Id*.

**B.    Voluntary Departure**

Prior to the completion of deportation proceedings, the Attorney General may grant an alien permission to depart voluntarily.  8 U.S.C. § 1229c(a)(1).  Such "fast-track voluntary removal" is unavailable if the alien has previously committed an aggravated felony.  *Id*.; 8 U.S.C. § 1227(a)(1)(A)(iii).  The term "aggravated felony" includes crimes of violence for which the term of imprisonment is at least one

ORDER DISMISSING INDICTMENT- 3

year.  8 U.S.C. § 1101(a)(43)(J).  Fast-track voluntary removal is also unavailable if the alien has engaged or is currently engaging in terrorist activity.  8 U.S.C. § 1227(a)(4)(B); 8 U.S.C. § 1182(a)(3). The failure of an immigration judge to inform an alien of his or her eligibility for fast-track voluntary removal constitutes a denial of due process.  *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004).

The Attorney General may also permit an alien to depart voluntarily at the conclusion of deportation proceedings.  8 U.S.C. § 1229c(b)(1).  However, an alien is only eligible for voluntary departure at this time if he or she "has been a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure."  8 U.S.C. § 1229c(b)(1)(b).

## C.  Reinstatement

When an alien illegally reenters the United States following removal, USCIS may reinstate the prior removal order without reopening or reexamining it.  8 U.S.C. § 1231(a)(5).  An immigration officer determines whether reinstatement is appropriate in any particular case.  *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 495 (9th Cir. 2007).  "The alien has no right to a hearing before an immigration judge in such circumstances."  8 C.F.R. § 241.8.  Nor may the alien collaterally attack the underlying removal order.  *Morales-Izquierdo*, 486 F.3d at 496 (citing 8 U.S.C. § 1231(a)(5)).

## I.  LEGAL STANDARD

A defendant facing charges under Section 1326 has a Fifth Amendment right to meaningful review of the underlying deportation.

ORDER DISMISSING INDICTMENT- 4

*United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047-48 (9th Cir. 2003)(citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 839, 107 S. Ct. 2148, 95 L. Ed. 2d 772).  By statute, a defendant facing charges under Section 1326 may collaterally attack the underlying removal when,

> 1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  A removal order is fundamentally unfair when,

> 1) Defects in the underlying deportation proceeding infringed upon the defendant's due process rights AND
>
> 2) The defendant suffered prejudice as a result of the defects.

*Ubaldo-Figeroa*, 364 F.3d at 1048.

The Defendant argues that the indictment in this case should be dismissed because the four prior deportation orders upon which it is based are invalid.  It does not appear that there are any administrative remedies available to the Defendant.  Nor does it appear that the Defendant has previously had an opportunity for judicial review of the prior deportation orders.  Pursuant to the stipulation of May 9, 2006, the Defendant waived his right to appeal the May 11 deportation.  The reinstatement process does not permit reexamination of the deportation order being reinstated.  The only disputed issue before the Court is whether the prior deportations were fundamentally unfair.

ORDER DISMISSING INDICTMENT- 5

## II.   WAS THE MAY 11, 2006 DEPORTATION VALID?

### A.   Did the May 11, 2006 Deportation Proceeding Deprive the Defendant of Due Process?

### 1.   Burden of proving waiver

The Defendant argues that the Government bears the burden of proving that the Defendant's waiver of his rights was voluntary, knowing, and intelligent.  The Government responds that the Defendant bears the burden of establishing that his due process rights were violated.  Neither party has cited any authority that bears directly on the issue of which party bears the burden.

The Court concludes that the Government bears the burden of establishing waiver.  In a related context, the Ninth Circuit has held that the Government bears the burden of proving that an alleged alien gave a voluntary, knowing, and intelligent waiver of his or her right to appeal a deportation.  *United States v. Lopez-Vasquez*, 1 F.3d 751, 754 (9th Cir. 1993).  Moreover, the Government has ready access to, and control of, the USCIS records that are probably the most conclusive documentary evidence of waiver or lack thereof.  The interests of justice therefore suggest that the burden of establishing waiver should fall on the Government.

Even if the burden of proof were to fall on the Defendant, it appears that the Defendant has met this burden.  The Defendant has introduced the only evidence available to him, his own testimony, to show that he never spoke with an immigration judge.  The Government has admitted that no contrary evidence exists.  The evidence before the Court thus establishes that the Defendant was never brought before an immigration judge, either before the deportation of May 11, 2006,

ORDER DISMISSING INDICTMENT- 6

nor in connection with any of the subsequent deportations.

**2.    Waiver of Defendant's right to a hearing**

Although an immigration judge may find a waiver to be voluntary, knowing, and intelligent on the basis of the documentary record, the documentary record did not reflect such a waiver in this case. Rather, the record reflected that the Defendant requested an expedited hearing.  Only after he had been held in custody for twenty days did the Defendant enter into a stipulation.  The Defendant indicates that he was told that he "could be deported immediately if I signed the stipulation."  Declaration of Jose Gomez-Hernandez, March 25, 2008, Ct. Rec. 34-3 ¶ 3.  In these circumstances, the Defendant's decision to forego a hearing was not voluntary.  The deportation proceedings of May 2006 thus deprived him of due process of law.

Citing the Ninth Circuit's decision in *United States v. Calderon-Segura*, 512 F.3d 1104 (9th Cir. 2008), the Government argues that the Defendant's Stipulated Request for Order establishes that the Defendant's waiver of his rights was voluntary, knowing, and intelligent.  This argument is unpersuasive because *Calderon-Segur*a does not, as the Government has argued, hold that a stipulation conclusively establishes that a defendant's waiver is voluntary, knowing, and intelligent.  Moreover, *Calderon-Segura* is distinguishable from the present case in two respects.  First, *Calderon-Segura* concerned a challenge to the expedited removal process based on the equal protection clause.  The Defendant in the present case is challenging four particular deportation proceedings based on the due process clause.  Second, the defendant in *Calderon-Segura* was

ORDER DISMISSING INDICTMENT- 7

ineligible for voluntary departure and, as a result, could not demonstrate that the challenged action resulted in prejudice. As explained more fully below, the Defendant currently before the Court has demonstrated prejudice. The immigration judge's failure to obtain a voluntary, knowing, and intelligent waiver of the Defendant's right to a hearing thereby infringed upon his right to due process of law.

### 3.    Waiver of Defendant's right to counsel

An individual facing deportation proceedings has no Sixth Amendment right to counsel. However, Congress has recognized the right to counsel as "among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004)(citing 8 U.S.C. § 1362(d)). Any waiver of the right to counsel must be voluntary, knowing, and intelligent. *Mendoza-Mazariegos v. Mukasey*, 509 F.3d 1074, 1080 (9th Cir. 2007). "Failure to obtain such a waiver is an effective denial of the right to counsel" and amounts to a violation of due process if the resulting prejudice "is so great as to potentially affect the outcome of the proceedings." *Tawadrus*, 364 F.3d at 1103.

In order to obtain a knowing and voluntary waiver of the right to counsel, an immigration judge must "(1) inquire specifically as to whether petitioner wishes to continue without a lawyer; and (2) receive a knowing and voluntary affirmative response." *Mendoza-Mazariegos*, 509 F.3d at 1080. It follows that an alleged alien can not make a knowing and voluntary waiver in the absence of an adequate colloquy. *See Partible v. Immigration & Naturalization Serv.*, 600

ORDER DISMISSING INDICTMENT- 8

F.2d 1094, 1096 (5th Cir. 1979)(holding waiver of right to counsel not knowing and voluntary where Defendant waived her rights "without being provided with any understanding by the immigration judge of the complexity of her dilemma and without any awareness of the cogent legal arguments which could have been made on her behalf").

Here, it is undisputed that the Defendant never went before an immigration judge and never engaged in a colloquy.  The immigration judge could neither specifically inquire into the Defendant's wish to continue without a lawyer, nor receive a knowing and voluntary response.  Under *Mendoza-Mazariegos*, the May 11, 2006 deportation thus constituted a denial of the Defendant's right to counsel.

As discussed more fully below, this denial was sufficiently prejudicial to potentially affect the outcome of the proceedings.  The immigration judge's failure to obtain a voluntary, knowing, and intelligent waiver of the Defendant's right to counsel thereby infringed upon his right to due process of law.

**B.    Did the Defect in the May 2006 Deportation Proceeding Prejudice the Defendant?**

In order to show that he or she suffered prejudice as a result of a procedural defect in a deportation proceeding, a defendant must "offer plausible grounds of relief which might have been available to him but for the deprivation of rights." *United States v. Zarate-Martinez*, 133 F.3d 1194, 1198 (9th Cir. 1998).  A denial of the right to counsel is prejudicial when the actions of a competent attorney would have exposed pertinent information.  *See Castro-O'Ryan v. U.S. Dep't of Immigration and Naturalization*, 847 F.2d 1307, 1313 (9th Cir. 1987)(holding denial of right to counsel was sufficiently

ORDER DISMISSING INDICTMENT- 9

prejudicial to remand a denial of an application for withholding deportation to the Board of Immigration Appeals where the arguments of competent defense counsel would have drawn correct standard to immigration judge's attention).

Here, the Defendant was eligible for fast-track voluntary departure under 8 U.S.C. § 1229c(a)(1).  Although the Defendant had previously been convicted of Second-Degree Robbery, he was sentenced to a period of incarceration of less than one year.  Under Ninth Circuit law, a crime of violence is considered an aggravated felony for immigration purposes only when the term of imprisonment actually imposed exceeded one year.  *United States v. Pimental-Flores*, 339 F.3d 959, 962 (9th Cir.2003)(citing *Alberto-Gonzalez v. INS*, 215 F.3d 906, 909-910 (9th Cir. 2000)).  The Defendant's prior conviction for second-degree robbery thus did not render him ineligible for fast-track voluntary departure.

If the Defendant's request for an expedited hearing had been honored, the immigration judge would have been obligated to inform him of his eligibility for fast-track voluntary departure under *Ortiz-Lopez*.  The immigration judge's failure to obtain a knowing, voluntary, and intelligent waiver of the Defendant's right to a hearing was thus prejudicial.  If the Defendant had been represented by counsel, a competent attorney would have drawn the possibility of fast-track voluntary departure to his attention.  The denial of the Defendant's right to counsel was therefore prejudicial under *Castro-O'Ryan*.

The Government argues that the Defendant was not prejudiced by

ORDER DISMISSING INDICTMENT- 10

the immigration judge's failure to obtain a valid waiver of his rights because his prior conviction for second-degree robbery may qualify as a "crime of moral turpitude," making him ineligible for voluntary departure.  However, good moral character is a requirement for voluntary departure at the conclusion of deportation proceedings under Section 1229c(b).  It is not a requirement for fast-track voluntary departure under Section 1229c(a).  Whether the Defendant's prior second-degree robbery conviction qualifies as a crime of moral turpitude is therefore irrelevant.

**III.  WERE THE SUBSEQUENT REINSTATEMENTS OF THE MAY 11, 2006 DEPORTATION ORDER VALID?**

The failure of the reinstatement process to provide for a hearing does not render it facially unconstitutional.  *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1173 (9th Cir. 2001).  Nor is the reinstatement process necessarily unconstitutional when the underlying deportation proceeding violated due process.  *Morales-Izquierdo*, 486 F.3d at 496.  As the Ninth Circuit has explained,

> Reinstatement of a prior removal order--regardless of the process afforded in the underlying order--does not offend due process because reinstatement of a prior order does not change the alien's rights or remedies.  The only effect of the reinstatement order is to cause Morales' removal . . . The reinstatement order imposes no civil or criminal penalties, creates no new obstacles to attacking the validity of the removal order.

*Id*. at 497-98 (emphasis added).  However, neither *Alvarenga-Villalobos* nor *Morales-Izquierdo* forecloses the possibility that reinstatement could violate due process of law when used as a basis for a subsequent criminal prosecution.  Indeed, *Morales-Izquierdo* explicitly left "open the possibility that individual petitioners may raise procedural

ORDER DISMISSING INDICTMENT- 11

1  defects in their particular cases." *Id*. at 496.

2      The Court finds that the reinstatement process is

3  unconstitutional as applied to the present case. *Mendoza-Lopez*

4  established that a criminal defendant must be permitted to

5  collaterally attack a deportation order underlying the charges pending

6  against him or her if there was no opportunity for judicial review at

7  the time of the original removal.  The reinstatement process does not

8  permit any review of the underlying deportation order.  The Defendant

9  therefore did not have an opportunity for judicial review on the three

10  occasions that the May 11, 2006 deportation order was reinstated.

11  Given that the May 11, 2006 removal order deprived the Defendant of

12  due process of law, it would be a further deprivation of due process

13  to charge the Defendant with criminal conduct on the basis of the

14  subsequent reinstatements.

15      The Government argues that *Alvarenga-Villalobos* and

16  *Morales-Izquierdo* foreclose the argument that the reinstatement

17  process violates procedural due process.  However, both

18  *Alvarenga-Villalobos* and *Morales-Izquierdo* are distinguishable from

19  the present case.  *Mendoza-Lopez* established that collateral attack of

20  a prior removal order must be available when 1) the Government seeks

21  to use the prior removal as an element of a criminal offense and 2)

22  "the alien was deprived of the right to judicial review in the initial

23  proceeding." *Id.*  Both of these conditions exist in the present case.

24  Neither was present in *Alvarenga-Villalobos*: it dealt with the

25  constitutionality of the reinstatement process in a civil context

26  where the plaintiff had received due process in connection with the

ORDER DISMISSING INDICTMENT- 12

underlying removal order.  Similarly, the plaintiff in
*Morales-Izquierdo* was unable to show that the defect in the underlying
deportations prejudiced him.

The Government further argues that the reinstatement process is
fully consistent with the INA because Congress has delegated the
authority to reinstate removal orders to the Attorney General.  The
Attorney General is not required to delegate this authority to an
immigration judge.  However, the nature and extent of the authority
delegated by Congress to the Department of Homeland Security and its
employees is irrelevant.  It is a basic principle of administrative
law that Congress can not delegate authority that it does not have.
It is an even more basic principle of American law that Congress does
not have the authority to override the Constitution.  The Court being
fully advised,

**IT IS HEREBY ORDERED:**

1. The Defendant's Motion to Dismiss the Indictment, **Ct. Rec. 33,**
is **GRANTED.**

2. The charge set forth in the Indictment, Ct. Rec. 1, is
**DISMISSED.**

**IT IS SO ORDERED.**  The District Court Executive is hereby
directed to enter this order, furnish copies to counsel, and **CLOSE THE
FILE.**

**DATED** this  16th  day of May, 2008.


                    s/ Fred Van Sickle
                    Fred Van Sickle
              **Senior** United States District Judge


ORDER DISMISSING INDICTMENT- 13